As we read the statute under which the comptroller assessed taxes against the relator for the year ending June 30th, 1899, it is unnecessary in the disposition of this appeal to consider one of the questions discussed by counsel, namely, whether an attempt to tax earnings derived from carrying United States mails would be in conflict with the Constitution *Page 3 
of the United States, for the statute does not authorize the particular assessment of which relator complains. The comptroller assessed a tax of $101,873.01 against the relator upon its gross earnings, amounting to $20,374,602.60; included in the last-mentioned amount was an item of $1,654,182.48, received by the relator for carrying United States mails, and the tax assessed thereon amounted to $8,270.91. The Appellate Division reached the conclusion that the amount of earnings received for carrying mails should not have been assessed, and it deducted the last-mentioned sum from the total assessment, and restated the account as thus corrected. A portion of the mails carried was of an intrastate, and another portion of an interstate character. The contracts contained in the record are two in number, one being made between the post office department and the relator, providing for the carrying of the mails between New York city and Buffalo, and containing an agreement upon the part of the department to furnish to the railroad for transportation mail matter from (1) all of the state of New York tributary to said company's road by any connections; (2) an equitable part of the states of Ohio and Indiana, estimated at one-half the quantity for the entire states named; (3) all of the state of Illinois except the city of Cairo and the city of Chicago, in case equal schedule time between that city and the city of New York should not be made by relator's road; (4) all north of the states of Ohio, Indiana and Illinois; (5) all west of the Mississippi river and north of a line at thirty-seven degrees of north latitude, and (6) all to and from the New England states. The other contract was made between the United States and the relator and the Lake Shore and Michigan Southern Railroad Company jointly, and provides for a fast mail service between New York city and Chicago and between the latter city and Toledo. The carriage of the mails and payment therefor are regulated by sections 3997 to 4005 (inclusive) of the Revised Statutes of the United States, an examination of which discloses that no distinction is made between interstate and intrastate mails, the cost of carrying being determined by routes and weights. *Page 4 
And these contracts are necessarily within the boundaries of the statute, so that the railroad company has neither the opportunity to investigate nor the right to inquire as to what part of the mail matter received at a given point goes into other states or foreign countries. The situation then is that the relator received mails from within the state to be carried outside of it, and mails from outside the state to be carried through it on the way to foreign countries and also mails to be carried from one point to another within the state. But it had neither the right nor the power to determine what part of the earnings received by it for carrying United States mails was for carrying interstate and foreign mails and what portion was for intrastate mails. It was the duty of the relator, under section 189 of the Tax Law, to make a report to the comptroller, which it did about August 1st, 1899, and it made as full a report as it was possible to make upon this subject. Whereupon the comptroller assessed the relator for all its earnings in carrying United States mails. The statute upon which the comptroller relied for his authority to make the assessment is section 184 of the Tax Law (L. 1896, ch. 908), the material part of which reads as follows:
"Every corporation and joint stock association formed for steam surface railroad * * * purposes, and all other transportation corporations not liable to taxes under sections one hundred and eighty-five or one hundred and eighty-six of this chapter, shall pay for the privilege of exercising its corporate franchises or carrying on its business in such corporate or organized capacity in this state, an annual excise tax or license fee which shall be equal to five-tenths of one percentum upon its gross earnings within the state, which shall include its gross earnings from its transportation or transmission business originating and terminating within this state, but shall not include earnings derived from business of an interstate character."
It will be observed that the authority to tax is confined to gross earnings within the state, and as that language might open the door to controversy as to whether it included gross *Page 5 
earnings for transportation of articles from outside the state to a point within it, and vice versa, or simply from one place to another within the state, the legislature undertook to avoid any such controversy by stating explicitly what it meant by gross earnings within the state, which it did in these words: "Its gross earnings from its transportation or transmission business originating and terminating within this state." Not content with the provision limiting the power of assessment in the language already quoted, the legislature went further and positively forbade the comptroller from including in such an assessment earnings derived from business of an interstate character. Some portion of the gross earnings in question, and perhaps by far the greater part, were derived from business of an interstate character. Such earnings the statute expressly and emphatically prohibits the comptroller from assessing, and, therefore, in making such an assessment he disobeyed the command of the very statute which furnished his only source of power to make any assessment whatever. The excuse offered for attempting to assess earnings which the statute says the comptroller shall not assess is that inasmuch as some of the gross earnings were properly assessable the relator should have pointed them out, and if it was not able to do so, as is conceded in this case, then the comptroller might punish it by taxing the gross earnings which the statute says shall not be taxed by him. In other words, the comptroller's position is, "I may require a transportation corporation to make a report that it is impossible to make, and then when the confession of inability to make such report is made, I can assess all its gross earnings notwithstanding the statute says I shall not." We do not agree that under this statute the comptroller can by any device whatever invest himself with authority to assess the gross earnings of a transportation corporation derived from business of an interstate character. That much of the gross earnings of such a corporation he is prohibited from assessing and if he would assess the rest of its gross earnings, which it is his duty to do if possible, upon him rests the burden of ascertaining what such gross earnings *Page 6 
amount to. In making that determination he is of course entitled to such aid from the corporation sought to be assessed as the report required by subdivision 2 of section 189 of the Tax Law will disclose, which includes all the facts in its possession and probably all that it could ascertain with diligent investigation, upon a specific demand by the comptroller. The comptroller may also consider such information as he may obtain from any other source. If it shall then prove impossible to ascertain the gross earnings outside of the interstate business, the statute operates to prevent any assessment whatever.
The order should be affirmed, with costs.
BARTLETT, HAIGHT, VANN, LANDON, CULLEN and WERNER, JJ., concur.
Order affirmed.