PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. v. MILLER, Comptroller.

(Supreme Court, Appellate Division, Third Department. May 11, 1904.)

1. CORPORATIONS—GROSS EARNINGS TAX—ASSESSMENT—REVISION—INTERSTATE BUSINESS.

Tax Law (Laws 1896, p. 857, c. 908) § 184, provides for a franchise tax to be assessed on the gross earnings of a transportation corporation within the state, which shall include its gross earnings from its transportation or transmission business originating and terminating within the state, but shall not include earnings derived from business of an interstate character. *Held*, that where it appeared that a domestic railway company's assessment under such section included receipts from express business beginning in the state and transferred within the state for delivery in

another state, or shipped outside the state for delivery within the state, such business being interstate commerce, and not taxable, the corporation was entitled to a revision of its assessment.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company, against Nathan L. Miller, as Comptroller of the State of New York, to review and resettle an account for franchise taxes assessed on relator's gross earnings. Comptroller's determination reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Ira A. Place and Thomas Emery, for relator.
John Cunneen, Atty. Gen., and William H. Wood, for respondent.

CHESTER, J. The relator is a domestic steam surface railroad corporation carrying on its business in this state, and as such is liable to an annual excise tax or license fee upon its gross earnings within the state, under section 184 of the tax law (Laws 1896, p. 857, c. 908). For the year ending June 30, 1900, the comptroller fixed the gross earnings of the relator within the state at the sum of $21,081,651.42, and assessed a tax of five-tenths of 1 per cent. against it upon that sum. The relator insists that the comptroller has improperly included in such gross earnings the sum of $596,145.60, received by it from express business of an interstate character. For the year ending June 30, 1901, the comptroller fixed the relator's taxable gross earnings at $19,589,878.25, and imposed a like tax thereon. The relator insists that there is improperly included therein the sum of $628,409.85, earnings from express business claimed to be of an interstate character. An application was made by the relator to the comptroller to make a revision and readjustment of the account for said taxes, and to deduct the amount so claimed to have been received by it from business of an interstate character. The comptroller denied the application, and this writ was obtained to review such determination.

In the report to the comptroller by the relator of its gross earnings for business within the state for the year ending June 30, 1900, it reported an item of $699,656.86 as received from express business wholly within the state, and also an item of $693,192.56 received for express business beginning in New York state and transferred within the state for delivery in another state. Both of these items, aggregating $1,392,859.42, were included in such gross earnings in the account for taxes for that year. In the testimony given in behalf of the relator before the comptroller upon its application for a revision, and in the brief of its counsel upon the hearing on the return to this writ before us, it is conceded that these items in the report are erroneous, and that 57 per cent., or $793,-929.87, of such aggregate amount should have been the sum stated as earnings from express business wholly within the state, and that 43 per cent., or $598,929.55, as I figure it, instead of $596,145.60, as above mentioned, should have been the amount stated for express business originating in the state and transferred within the state for delivery in another state. In the report of gross earnings within the state for the year ending June 30, 1901, made by the relator to the comp-

troller, there is an item of $821,326.72 received from express business wholly within the state. In that report there is no mention of the amount received for business beginning in New York state and transferred within the state for delivery in another state, but the comptroller has, for the purpose of his assessment, added to the express receipts, over and above the amount stated in the report, the sum of $628,409.85. The amount so added has apparently been approximated from the corresponding item contained in the report for the prior year, as at the time the assessment was made the comptroller, so far as the record now before us appears, had no other source of information with respect to that item. The testimony with reference to the way the percentages above named were arrived at shows that the general bookkeeper in the office of the relator's comptroller took the statements for every other month from the express companies with which the relator had contracts, showing the monthly earnings from the various classes of business with reference to the various points of shipment, and from a recapitulation figured out as best he could from these statements, by a method of approximation adopted and explained by him, the percentages of state and interstate earnings as related to the gross earnings from express business. While this testimony does not amount to legal proof which would justify the foundation of a judgment based thereon, nevertheless it is entirely clear from the evidence as a whole that a very large proportion, if not the entire amount complained of by the relator as having been improperly included in the assessment, are earnings received by the relator for transporting express freights shipped in New York and transferred within the state for delivery outside the state, or shipped outside the state for delivery in the state. Where it appears that the assessment includes earnings that are not lawfully taxable, the relator is entitled to a revision of the account for taxes. That has recently been held with respect to earnings derived by the relator from carrying the United States mails, where it was impossible for it to determine how much of such earnings were derived from carrying domestic mails and how much from carrying interstate and foreign mails, but where it was clear that some portion of such earnings was derived from business of an interstate character. People ex rel. N. Y. C. & H. R. R. R. Co. v. Morgan, 168 N. Y. 1, 60 N. E. 1041. The question is therefore presented here as to whether earnings derived by the relator for transportation, wholly within the state, of express freights which were either shipped from points in the state for delivery out of the state or from points out of the state for delivery in the state, are "earnings derived from business of an interstate character," and therefore not taxable under the law.

Section 184 of the tax law provides for a franchise tax upon the "gross earnings within the state" of a transportation corporation, "which shall include its gross earnings from its transportation or transmission business originating and terminating within this state, but shall not include earnings derived from business of an interstate character." While it may be said that the earnings in question were from its transportation business originating and terminating within the state, as all its services with relation to this business were performed within the state, yet the decisions of the United States Supreme Court, which

is the ultimate judicial authority upon questions of this character, make it entirely clear that the earnings in question are derived from business of an interstate character. A reference need be made to a few only of these authorities. In The Daniel Ball, 10 Wall. 557, 19 L. Ed. 999, it was held that a steamer which was engaged in navigating Grand river, wholly in the state of Michigan, and in the transportation of merchandise destined for ports and places in states other than the state of Michigan, as well as of goods brought from without the state of Michigan and destined for places within that state, was engaged in commerce between the states. In Western Union Telegraph Company v. Alabama State Board of Assessment, 132 U. S. 472, 10 Sup. Ct. 161, 33 L. Ed. 409, the United States Supreme Court reversed a judgment of the Supreme Court of Alabama which upheld a tax upon the gross receipts of the plaintiff in error which included its receipts upon messages carried partly within and partly without the state, upon the ground that the statute of Alabama, construed as authorizing a tax upon such receipts, was a regulation of commerce between the states, and therefore unconstitutional. In Hanley v. Kan. City Southern R. R. Co., 187 U. S. 617, 23 Sup. Ct. 214, 47 L. Ed. 333, a decree of the Circuit Court restraining the Railroad Commissioners of the State of Arkansas from fixing and enforcing freight rates for continuous transportation between points in that state by a railroad route not wholly within that state was affirmed on the ground that such transportation was interstate commerce, and not subject to the control of that state. In Norfolk, etc., R. R. Co. v. Penn., 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394, the question was presented as to whether the business of the plaintiff in error in the state of Pennsylvania was interstate commerce. This was answered in the affirmative. Mr. Justice Lamar, who wrote the opinion of the court, said:

"The business of the through line of railroad, of which the plaintiff in error forms a part or in which it is a link, consists, in a measure, of carrying passengers and freight into Pennsylvania from other states, and out of that state into other states. It certainly requires no citation of authorities to demonstrate that such business—that is, the business of this through line of railroad—is interstate commerce. That being true, it logically follows that any one of the roads forming a part of, or constituting a link in, that through line, is engaged in interstate commerce."

While the services rendered by the relator were entirely within this state, and the earnings derived therefrom were for such services, yet the express business from which those earnings were received was all freights received by it within this state for transmission to points outside of the state, or freights received from points outside of this state for transmission to points within this state, and therefore, under the authorities above referred to, such business was of interstate character, and came within the express prohibition of the statute with reference to the power of the comptroller to tax. When the fact appeared that his assessment included earnings from business of that character, he should have granted the application for revision.

While this conclusion requires a reversal of the determination of the comptroller, in view of the unsatisfactory character of the evidence presented before him upon the question of the respective proportions of interstate and intrastate earnings, which made up the gross earnings

of the relator from express business for the years in question, we think we should not attempt to restate the account, but leave that to the comptroller, as he may procure such evidence as will enable him to state the same more accurately than we can upon this record.

Determination of the comptroller reversed, and matter remitted to him to restate the account, with $50 costs and disbursements to the relator. All concur.